Filed 8/18/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 157

State of North Dakota, Plaintiff and Appellee

v.

Branden Thurman Clark, Defendant and Appellant

Nos. 20100372 & 20100373

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lawrence E. Jahnke, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Faye A. Jasmer (argued), Assistant State’s Attorney and Jordon Evert (on brief), third-year law student, appearing under the Rule on the Limited Practice of Law by Law Students, P.O. Box 5607, Grand Forks, N.D. 58206-5607, for plaintiff and appellee.

Jay Dennis Knudson, 405 Bruce Avenue, Suite 101, Grand Forks N.D. 58201, for defendant and appellant.

State v. Clark

Nos. 20100372 & 20100373

Kapsner, Justice.

[¶1] Branden Clark appeals from an order denying his motion for correction of sentence.  Clark argues his sentences are illegal because they merged with his sentences in two other cases and his due process rights were violated by the delay in holding a hearing on the petition to revoke his probation.  We affirm.  

I

[¶2] On January 19, 2005, Clark was convicted of theft by deception, a class C felony, in case number 18-04-K-0951 (“951”) and issuing a check without sufficient funds or without an account, a class C felony, in case number 18-04-K-1418 (“1418”).  He was sentenced to eighteen months in prison, with fifteen months suspended, and three years probation in each case.  Clark received credit for time served prior to his conviction and he was released from incarceration on approximately February 15, 2005.  

[¶3] On April 19, 2005, Clark was convicted of theft of property, a class C felony, in case number 18-04-K-2454 (“2454”).  He was sentenced to five years in prison with three years suspended and five years probation.  On November 23, 2005, Clark was convicted of theft of services, a class C felony, in case number 18-05-K-2075 (“2075”).  He was sentenced to five years in prison with three years and six months suspended and three years and six months probation.

[¶4] On December 8, 2005, the State filed a petition to revoke Clark’s probation in cases 951 and 1418.  An order to apprehend was attached to the petition and was signed on December 7, 2005.  An order to apprehend warrant was issued on December 8, 2005.  Clark was in the custody of the Department of Corrections at the time serving his sentences in 2454 and 2075, but he was not served with the petition and warrant.  Clark received a copy of the petition, and in January 2006 he filed a motion to appear telephonically or by interactive television and he demanded a speedy trial.  In February 2006, the district court denied his motions, ruling Clark had not been served with the petition and the order to apprehend had not been not executed. 

[¶5] On July 5, 2006, Clark was paroled in cases 2454 and 2075 to serve a sentence in Minnesota.  He was released from custody in Minnesota on February 27, 2007, and he returned to North Dakota to start his probation.  Clark left North Dakota sometime after July 2007.  On August 29, 2007, a petition to revoke Clark’s probation was filed in case 2454.  On September 6, 2007, a petition to revoke Clark’s probation was filed in case 2075 and an amended petition was filed in cases 951 and 1418.  Order to apprehend warrants were issued on August 29, 2007, in case 2454, and on September 6, 2007, in case 2075.  The petitions for revocation and warrants to apprehend were served on March 30, 2009.

[¶6] On July 22, 2009, the district court entered an order revoking Clark’s probation in all four cases and resentencing Clark to serve five years in prison in each case.  Clark was given ninety days credit for time served in cases 951 and 1418, two years in case 2454, and eighteen months in case 2075.  Clark appealed the order revoking his probation, and this Court affirmed.  
State v. Clark
, 2010 ND 106, 783 N.W.2d 274.

[¶7] On October 4, 2010, Clark requested the court correct his sentences in cases 951 and 1418 under N.D.R.Crim.P. 35(a), arguing his sentences should have merged with the sentences in cases 2454 and 2075 and were satisfied when he completed the original term of imprisonment in cases 2454 and 2075.  He also claimed his due process rights were violated because of the delay in holding the revocation hearing.  The district court denied Clark’s motion, stating:

based upon the facts and circumstances of the revocations and re-

sentencings in March 2009, as well as the Defendant’s extensive past criminal history up to that point in time, his motions for re-sentence modifications in these matters is DENIED.  Mr. Clark presented no viable excuses for the misconduct alleged in the Petitions to Revoke which were filed on March 16, 2010, and the need for confinement as directed following the on [sic] March 16, 2009 hearing outweighs any policies favoring placing him back on probation at this time.

II

[¶8] Under N.D.R.Crim.P. 35(a), the sentencing court may correct an illegal sentence at any time.  A sentence is illegal if it is contrary to statute.  
State v. Edwards
, 2007 ND 113, ¶ 5, 736 N.W.2d 449.

[¶9] Clark argues he received illegal sentences in cases 915 and 1418 because the sentences in those cases should have merged with the sentences in 2075 and 2454 under N.D.C.C. § 12.1-32-11(1) and become one sentence.  He contends his sentences in 915 and 1418 should have been deemed fulfilled once he was sentenced or when he completed his sentences in 2075 and 2454.  

[¶10] 
Section 12.1-32-11(1), N.D.C.C., provides for the merger of sentences when an offender has committed multiple offenses:

Unless the court otherwise orders, when a person serving a term of commitment imposed by a court of this state is committed for another offense or offenses, the shorter term or the shorter remaining term shall be merged in the other term.  When a person on probation or parole for an offense committed in this state is sentenced for another offense or offenses, the period still to be served on probation or parole shall be merged in any new sentence of commitment or probation.  A court merging sentences under this subsection shall forthwith furnish each of the other courts previously involved and the penal facility in which the defendant is confined under sentence with authenticated copies of its sentence, which shall cite the sentences being merged.  A court which imposed a sentence which is merged pursuant to this subsection shall modify such sentence in accordance with the effect of the merger.

[¶11] The standard of review for interpreting a statute is well-established:

The interpretation of a statute is a question of law, which is fully reviewable on appeal.  The primary objective in interpreting a statute is to determine the legislature’s intent, and we look at the language of the statute first to determine intent.  Words in a statute are given their plain, ordinary, and commonly understood meaning, unless they are defined by statute or unless a contrary intention plainly appears.  N.D.C.C. § 1-02-02.  The letter of a statute cannot be disregarded under the pretext of pursuing its spirit when the language of the statute is clear and unambiguous.  N.D.C.C.§ 1-02-05.  A statute is ambiguous if it is susceptible to different, rational meanings.  Statutes are construed as a whole and are harmonized to give meaning to related provisions.

State v. Martin
, 2011 ND 6, ¶ 5, 793 N.W.2d 188 (citations and quotations omitted). 

[¶12] The criminal code, N.D.C.C. tit. 12.1, does not define the term “merge,” but this Court has interpreted N.D.C.C. § 12.1-32-11(1) in prior cases.  In 
State v. Mees
, 272 N.W.2d 61, 66 (N.D. 1978), this Court said,  “It appears that [§] 12.1-32-11(1) merely sets forth the common law rule that in the absence of a court order directing otherwise a sentence for crimes committed in the same state are to be served concurrently.”  In 
State v. Patten
, 353 N.W.2d 26 (N.D. 1984), the Court held N.D.C.C. § 12.1-32-11(1) provides for concurrent sentencing when crimes are committed in the same state, but the sentencing court has discretion to order sentences run concurrently or consecutively.  In 
State v. Johnson
, 1997 ND 235, 571 N.W.2d 372, the Court said N.D.C.C. § 12.1-32-11(1) grants unrestricted discretion to a sentencing court to impose consecutive sentences in every case. 

[¶13] The legislative history is consistent with this interpretation and indicates the term “merge” is the equivalent of “concurrent.”  The legislative history notes, “Section 10[, which became N.D.C.C. § 12.1-32-11,] represented new material designed to cover instances in which a defendant was being sentenced for multiple offenses, and to define policy regarding the use of concurrent and consecutive sentences.”  
Minutes of the Interim Comm. on Judiciary “B”
 18 (September 21-22, 1972).  When N.D.C.C. § 12.1-32-11 was first enacted, subsection 1 provided, “Separate sentences of commitment imposed on a defendant for two or more offenses constituting a single criminal episode shall run concurrently.  Sentences for two or more offenses not constituting a single criminal episode shall run concurrently unless the court specifically orders otherwise.”  1973 N.D. Sess. Laws ch. 116, § 31.  This provision was removed before the statute became effective in 1975.  1975 N.D. Sess. Laws ch. 116, § 31.  The legislative history indicates the section was deleted because the section propounds a philosophy in favor of concurrent sentences and “the Legislature should not set forth a statutory philosophy favoring concurrent sentences, but should leave that determination, i.e., whether sentences are to be concurrent or consecutive, solely in the discretion of the sentencing judge.”  
Report of the North Dakota Legislative Council
, at 126 (1975).  
See also
 
Minutes of Interim Comm. on Judiciary “A”
 20, 27 (Sept. 30 and Oct. 1, 1974) (noting Sgt. MacCarthy’s comment that he was opposed to a basic “concurrent sentencing philosophy,” noting suggestion that the word “consecutively” be substituted for the word “concurrently” in subsection 1, and noting the committee’s ultimate decision to delete subsection 1).  The legislative history indicates the legislature intended N.D.C.C. § 12.1-32-11 to authorize the court to order concurrent or consecutive sentences.  

[¶14] Section 12.1-32-11(1), N.D.C.C., is based on Model Sentencing Act §§ 19, 20, and 21.  
Minutes of Interim Comm. on Judiciary “B”
 12-13 (Sept. 21-22, 1972) (noting the source of the legislation that became N.D.C.C. § 12.1-32-11 was certain sections of the Model Sentencing Act).  Sections 19, 20, and 21 of the Model Sentencing Act contain almost the same language as N.D.C.C. § 12.1-32-11(1).

[¶15] Montana has a consecutive sentences statute, which is also based on the Model Sentencing Act §§ 19, 21, and 22.  
See
 Mont. Code Ann. § 46-18-401.  The Montana statute currently provides:

(1) Unless the judge otherwise orders:

(a) whenever a person serving a term of commitment imposed by a court in this state is committed for another offense, the shorter term or shorter remaining term may not be merged in the other term; and

(b) whenever a person under suspended sentence or on probation for an offense committed in this state is sentenced for another offense, the period still to be served on suspended sentence or probation may not be merged in any new sentence of commitment or probation.

(2) The court, whether or not it merges the sentences, shall immediately furnish each of the other courts and the penal institutions in which the defendant is confined under sentence with authenticated copies of its sentence, which must cite any sentence that is merged.

(3) If an unexpired sentence is merged pursuant to subsection (1), the court that imposed the sentence shall modify it in accordance with the effect of the merger.

Mont. Code Ann. § 46-18-401.  The statute was previously amended, and prior to the amendment the statute provided the shorter term of commitment or the period still to be served on probation “shall be merged” in the longer or new sentence of commitment.  The Montana Supreme Court has interpreted Mont. Code Ann. § 46-18-

401(1) as requiring merged sentences to run concurrently, but has not held the statute requires the sentences to become one sentence.  
See
 
State v. Tracy
, 2005 MT 128, ¶ 28, 113 P.3d 297 (defendant was entitled to credit for time served on sentences ordered to run concurrently because they merged and ran at the same time); 
Robbins v. McCormick
, 853 P.2d 1205 (Mont. 1993) (suspended sentence in prior charge merged with new sentences, and therefore State had no authority to require petitioner to serve the suspended portion of the prior sentence consecutively with the end of his new sentences); 
State v. Thiel
, 788 P.2d 337, 339 (Mont. 1990) (prior deferred sentence and suspended sentence merged with new sentence and the sentences imposed in the prior cases should be served concurrently with the sentence in the new case); 
In re Petition of Arledge
, 756 P.2d 1169, 1171 (Mont. 1988) (sentences in unrelated cases “shall be merged” and the consecutive sentences imposed in one case shall run concurrently with the sentences in the other cases).

[¶16] Other courts have also interpreted the term “merge” in sentencing statutes as the equivalent of concurrent.  
See, e.g.
, 
Harris v. Commissioner of Correction
, 860 A.2d 715, 724 (Conn. 2004) (“The merger concept embodied in [Conn. Gen. Stat. § 53a-38(b)] simply requires that the respondent compare the length of each sentence, after adjustment for its authorized credits, in order to ascertain which is the longest for the purpose of determining the prisoner’s discharge date.  The merger process does not alter the fact that concurrent sentences remain separate terms of imprisonment which the legislature has permitted to be served at one time.”); 
People v. Sewell
, 574 P.2d 1231, 1232-33 (Cal. 1978) (statute that required multiple life terms merge into a single life term means the terms run concurrently but still remain separate sentences).

[¶17] We conclude under N.D.C.C. § 12.1-32-11(1) the term “merge” is the equivalent of “concurrent,” and therefore when a person on probation or parole is sentenced for another offense, the period still to be served on probation merges and runs concurrently with any new sentence of commitment or probation for the new offense.  The sentences remain separate terms of imprisonment or probation, but are served at the same time.  Clark’s sentences in cases 951 and 1418 did not become one sentence with the sentences in cases 2454 and 2075; rather, his terms of probation continued to run in cases 951 and 1418 while he was serving his sentences in cases 2454 and 2075.   

[¶18] Although Clark contends he was no longer on probation in cases 951 and 1418 when his probation in those cases was revoked, the revocation process in those cases was started before his probation terminated.  In cases 951 and 1418, Clark received sentences of eighteen months incarceration, with fifteen months suspended, and three years probation.  His probation was ordered to start on the day he was released from incarceration or at the end of parole.  Clark was released from incarceration and his probation started on approximately February 15, 2005.  Clark’s probation ended on approximately February 15, 2008.  The State filed a petition to revoke Clark’s probation in these cases on December 8, 2005.  An order to apprehend was included with the petition and was signed on December 7, 2005.  An order to apprehend warrant was issued on December 8, 2005.  Although Clark was incarcerated for his sentences in cases 2454 and 2075 at the time the warrant was issued, the warrant was not executed immediately.  Clark was paroled to serve a Minnesota sentence in July 2006, and he returned to North Dakota after he was released from incarceration in Minnesota in late February 2007.  Clark left North Dakota some time after July 2007.  An amended petition to revoke Clark’s probation in cases 951 and 1418 was filed on September 6, 2007.  The arrest warrant was not executed and the petition to revoke Clark’s probation was not served until Clark returned to North Dakota on March 30, 2009.

[¶19] Clark was still on probation when the first petition to revoke his probation was filed, the warrant was issued, and the amended petition was filed.  Clark left the state before his probation terminated and before the warrant was executed or he was served with the petitions.  Section 12.1-32-07(7), N.D.C.C., provides procedures for revoking probation:

The court may continue or modify probation conditions or revoke probation for a violation of probation conditions occurring before the expiration or termination of the period of probation notwithstanding that the order of the court is imposed after the expiration or termination has occurred.  The petition for revocation must be issued within sixty days of the expiration or termination of probation.

[¶20] The statute indicates the filing of the petition for revocation initiates the revocation proceedings and continues the district court’s jurisdiction.  Other courts have held various events initiate the revocation process and continue the court’s jurisdiction, including when a revocation petition is filed, a warrant is issued, a petition is filed and a warrant is issued, or a warrant is issued and executed within a reasonable period of time.  
See, e.g.
, 
United States v. Janvier
, 599 F.3d 264 (2d Cir. 2010) (holding 18 U.S.C. § 3583 requires a warrant be issued for a court to have jurisdiction to revoke a defendant’s supervised release); 
Young v. State
, 552 So.2d 879 (Ala. Ct. App. 1989) (some overt or affirmative act is required to begin revocation proceedings and toll the probation term, including arrest, filing a motion to revoke, or sending the court a copy of the supervisor’s report and asking for a revocation hearing); 
Hill v. State
, 304 S.W.2d 619 (Tenn. 1957) (court had jurisdiction to revoke because petition was filed and warrant was issued even though they had not been served because defendant was a fugitive from justice).  Here, the court had jurisdiction to revoke Clark’s probation in July 2009 because the petition and amended petition were filed and the arrest warrant was issued prior to expiration of the probation term initiating revocation proceedings and continuing the court’s jurisdiction.

[¶21] Clark also argues he should at least receive credit in cases 951 and 1418 for the time he spent incarcerated in cases 2454 and 2075.  However, this Court has said a defendant is not to receive credit in one case for time he spent in custody on a wholly unrelated charge.  
See
 
Gust v. State
, 2006 ND 114, ¶¶ 5-10, 714 N.W.2d 826.  Clark received credit for the time he served in each case and he is not entitled to credit in cases 951 and 1418 for time he served in cases 2454 and 2075. 

[¶22] The district court revoked Clark’s probation in all four cases and resentenced Clark to serve five years in each case.  Clark received credit for the time he previously served in each case.  When a court gives a defendant credit for the time the defendant has previously served the court looks backward at the time the defendant has spent in custody for that offense.  
See
 
State v. Neva
, 2009 ND 127, ¶ 8, 767 N.W.2d 879. Clark is not entitled to receive credit for the time he served in cases 2454 and 2075 in cases 951 and 1418.  Merger is a forward-looking concept applied at sentencing where sentences exist for multiple offenses.  Under § N.D.C.C. 12.1-32-11(1), unless the court exercises its discretion to impose consecutive sentences, the sentences merge and run concurrently, but remain separate sentences.  The remaining time Clark has left to serve on his sentences in the four cases will run concurrently.  

[¶23] We conclude Clark did not receive illegal sentences in cases 915 and 1418 and the district court properly denied Clark’s motion to correct his sentences.  

III

[¶24] Clark argues he was denied due process when he was not brought before the court on the pending petition for revocation while he was in custody and serving his sentences in cases 2454 and 2075 or after he was released and was residing in North Dakota.  

[¶25] Probation revocation is not a stage of the criminal prosecution, and therefore an individual’s rights are limited.  
State v. Wardner
, 2006 ND 256, ¶ 18, 725 N.W.2d 215; 
see also
 
United States v. Sanchez
, 225 F.3d 172, 175 (2d Cir. 2000).  In 
Moody v. Daggett
, 429 U.S. 78 (1976), the United States Supreme Court held a federal parolee imprisoned for a crime committed while he was on parole was not constitutionally entitled to an immediate parole revocation hearing when a parole violator warrant was issued but not executed.  The Court said parolees are not entitled to a hearing until the warrant is executed and the parolee is taken into custody because the parolee does not suffer a loss of liberty as a parole violator before that time.  
Id.
 at 87.  The Court held execution of the warrant and custody under that warrant is the event that triggers any loss of liberty and the requirement of a timely hearing.  
Id.
  Probationers and parolees have the same rights in revocation hearings, and therefore 
Moody
 is instructive.  
See
 
United States v. Garrett
, 253 F.3d 443, 448 (9th Cir. 2001); 
Sanchez
, at 175.  

[¶26] The delay in time between when a probation revocation petition is filed and the arrest warrant is executed alone generally does not violate the probationer’s due process rights; rather, the probationer must show he was prejudiced by the delay.  
Sanchez
, 225 F.3d at 175; 
see also
 
United States v. Rasmussen
, 881 F.2d 395, 398-99 (7th Cir. 1989) (effect of a delay on probationer’s rights is analogous to a right to a speedy trial, and in assessing the significance of the delay, the court should consider the length of the delay, reason for the delay, the defendant’s assertion of his rights, and prejudice to the defendant); 
State v. Pittman
, 3 A.3d 137, 141 (Conn. App. Ct. 2010) (to establish a due process violation a defendant must show prejudice or an extreme delay); 
State v. Hall
, 195 P.3d 220, 224-25 (Kan. 2008) (in deciding whether a delay in executing a warrant for probation revocation violated due process the court must consider whether there was any prejudice or if there is any indication the State waived the violation).

[¶27] Under the facts of this case, the delay did not violate Clark’s due process rights.  He was incarcerated from the time the petition for revocation was filed until late February 2007, he left the state in July 2007, and he did not return until some time in 2009.  Clark claims he was prejudiced by the delay because he could have served the sentences concurrently if his probation had been revoked earlier.  However, a court has discretion to decide whether to order sentences run concurrently or consecutively and there is no indication the court would have ordered the sentences run concurrently if it had considered the motion to revoke Clark’s probation soon after the sentences in 2452 and 2075 were imposed.  
See
 N.D.C.C. § 12.1-32-11 (court has discretion in ordering concurrent or consecutive sentences); 
Sanchez
, 225 F.3d at 176; 
see also
 
Moody
, 429 U.S. at 87-88.  Clark does not contend the delay impaired his ability to contest the revocation.  Clark has failed to establish he was prejudiced by the delay.  We conclude Clark’s due process rights were not violated.

IV

[¶28] We conclude Clark’s sentence is not illegal and his due process rights were not violated.  We affirm the district court’s decision to deny Clark’s motion for correction of sentence.

[¶29] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.